CHARLES N. SHEPHERD, Appellant, v. WILLIAM D. HILL and
MARY J. HILL, his wife, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1872.)

In an action in the nature of a creditor's bill to reach property in the
hands of a third person alleged to be held for the debtor's benefit, the
decision of a referee upon appeal on the exceptions to findings of fact is
to be considered at General Term in view of all the evidence, and to be
reversed or affirmed according to the conclusion of fact which shall be
arrived at by the court.

A debtor made a general assignment of his goods (in 1861), some of them
purchased on credit from the plaintiff. The assignee sold the assigned
property in bulk to a third person, a farmer, for whom the debtor then
claimed to act as agent in the management of a miscellaneous business,
but of such a character and under such circumstances as led to a conclu-
sion that the agency was fraudulent and the business his own. During
the alleged agency real estate was conveyed to his wife, and he made a
deposit to her credit, and continued to make like deposits after he claimed
to have terminated his first agency, when he assumed to act as agent for
his wife, who had no property except such as came to her from her hus-
band after he had incurred the debt. In a creditor's action to reach the
interest standing in the wife's name in the real estate, the court reviewed
the question of fraud upon the evidence and reversed the decision of the
referee, which was for the defendant, and ordered a new trial.

THIS action is what is called a creditor's bill, brought to
reach property of the defendant, William D. Hill, some of
which, it is claimed, is covered by a claim of the defendant,
Mary J. Hill, in fraud of the creditors of the said William D.;
and to set aside a conveyance of real estate held in the name
of the said Mary, the wife of the said William, also charged
to be in fraud of the rights of the creditors of the said William,
and for other relief. The action was referred to a sole referee,
who reported the issue of fact and law in favor of the defend-
ants. From the judgment entered upon the report of the
referee the plaintiff appeals to this court.

*S. W. Judson,* for the plaintiff.

*Cooke & Loundsbery,* for the defendants.

Present—P. POTTER, P. J., PARKER and DANIELS, JJ.

P. POTTER, P. J.   If the facts are correctly found in this case by the referee, his conclusions of law are right.   It seems, however, to be the settled law in such a case as this, that it is the duty of this court to determine whether the facts controverted on the trial are correctly found by an examination, by the court, of all the evidence (*Burgess* v. *Simonson*, 45 N. Y., 228), and in cases of fraud to examine all the evidence in the case, and to reverse or affirm the judgment, according to the conclusion of fact which shall be arrived at upon the question of fraud. (Per COMSTOCK, J., in *Griffin* v. *Marquardt*, 17 N. Y., 30.)   And this duty is also enforced by the provisions of the Code (§§ 268, 272).   In a case like that at bar, which is exceedingly voluminous, and having the principal issue in it a question of fraud, the duty is somewhat onerous.   In all such cases, where the appeal is based upon the ground that the findings of fact are contrary to evidence, it is not possible to determine it by any well defined rules of law, but the decision must depend in a great degree upon the peculiar circumstances of each case.   (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y., 632.)

There are certain leading facts in this case that may be first stated, which are not controverted, and which, being so stated, will enable us the more readily to apply the other evidence, upon which the report of the referee is based, and to draw our own legitimate conclusions.

The defendant, William D. Hill, had purchased goods of the plaintiff upon credit in his own name, in June, 1861. On the 26th August, 1861, two months thereafter, said Hill made a general assignment of all his property for the benefit of his creditors, giving preferences.   The plaintiff was not preferred as to his debt.   The assignee, Slight, sold the assigned property, including a lease of the store (of the value of $1,200) in a lump to one John McMullen, then a stranger to the assignee.   The negotiations and arrangement for this McMullen to purchase were made entirely by the defendant, William D. Hill.   McMullen was a farmer, living about forty miles from Kingston, the place where the store and the

assigned property was kept, and was not called as a witness by defendants.

Upon the purchase by McMullen, or in his name, the defendant William D. Hill took possession again of the store and property, including the assigned accounts, and continued business as before, but claiming to be the agent of McMullen, and opened an account with the Ulster County Bank in the name of " W. D. Hill, agent," and continued it from October, 1861, to 31st May, 1867.

During all that period, and even down to the day of the trial, W. D. Hill never had any settlement or accounting with McMullen, as to his agency or otherwise; and there never was any arrangement or agreement between him and McMullen as to any terms or conditions of his agency which appear in the case, or as to his powers as such agent, except that he was to have fifty dollars per month.     During that time, Hill bought and sold notes, bonds and mortgages, county bonds, sheep-skins, butter, apples, beeswax, mules and horses, and he has no regular account of that business for McMullen.

During the same time, Hill acted as agent for one Howell, also for a Mr. Brush and for Mr. Grant; and for certain other parties he went to the oil regions.     He also acted as agent of an insurance company.     His business for Howell was to the extent of $100,000, working over a year, at a salary of $100 a month.     The business he says he did for McMullen amounted to $50,000; for Brush, $12,000 to $15,000.     His drafts on Howell during that time, were passed to the credit of William D. Hill, agent, in the Ulster County Bank, and he checked it out in the same name.     His business with Grant was buying and selling mules and horses, and this account was kept in the same way.     This account included notes taken in the business and discounted at the bank.     He kept only one bank account.

This bank account was balanced on the 31st May, 1867, by William D. Hill, agent, on that day; he drawing a check for $479.91, the exact sum on that day standing to the credit of William D. Hill, agent.     What exactly was done with this

$479.91, so belonging to John McMullen, as is claimed, does not appear, unless it may be inferred that it was taken as balance of salary by W. D. Hill, agent, and so just squaring accounts. Hill has an impression that he paid costs with it in a suit he commenced in McMullen's name. McMullen, very kindly, has not as yet demanded it. But with no evidence of dissatisfaction on the part of McMullen; no evidence of a dismissal of his agent; with no meeting of the parties to agree on a breach or change of this relation of principal and agent; there is an abrupt close of the relation made *ex parte*, by the agent, with no complaint from Mr. McMullen and no demand of the profits. The store merchandising was discontinued in December, 1861, and before he commenced this miscellaneous business.

A very good reason is presented for the omission of W. D. Hill to settle with McMullen, in that, as Hill testifies, he has no account book, from 1861 to 1867, of his dealing with individuals for whom he acted as agent, and no account with McMullen but the bank account, and that a large proportion of his transactions are not even in the bank account. He states that he was to have fifty dollars a month from McMullen, and had lived that up; McMullen would, therefore, by legal inference, be entitled, as matter of law and justice, to all that was made over the salary. At all events, Hill would have nothing belonging to him when he closed the agency.

But one month and fourteen days *before* closing his agency with McMullen, to wit, on the 18th April, 1867, he opened a new account in the same Ulster County Bank in the name of Mary J. Hill (his wife), the other defendant, by depositing in that bank to her credit the balance of some note, to the amount of $587 of his previous business, and during the same month depositing other cash to the amount of about $1,400 more, making his deposits in favor of his wife in that month nearly $2,000, and drew out about $1,200, having standing to his credit, before closing the McMullen agency, about $800; and during the next nine months he had deposited in the bank, to her credit, from various sources, above $23,000, and during

Shepherd *v.* Hill.

the following eight months about $11,000, leaving a balance in favor of the account at its close of $883.17.

But before he closed the agency with McMullen, which was in May, 1867, and while he claims still to have been his agent, and before he commenced this agency in the name of his wife, the 18th April, 1867, to wit, on the 26th September, 1866, there was purchased, in the name of Mrs. Hill, a house and lot, for the price of either $6,250 or $5,750, and $1,750 was paid thereon, and the title taken in the name of the wife, Mrs. Hill, and a bond and mortgage was given back for $4,000, signed by both Hill and his wife. And as this estate, with the improvements made thereon by Mr. Hill, is shown to be worth more than the purchase price, the plaintiff claims that the interest therein, which is in excess of the lien by mortgages, ought to go to pay his judgment.

The preceding statements, so far as they are statements of facts, are carefully abstracted from the case, and are not controverted.

It then became the duty of the referee to find, from the above and other evidence, whether the defendant Wm. D. Hill has, or has had, property sufficient to pay the debt and judgment he honestly owes the plaintiff, since the same became due. This payment it is but plain, simple justice that he should make. If he has had, or now has property, and has used a fraudulent cover or concealment, to hinder, delay or defraud his creditor, and such property can be reached, the plaintiff is entitled to relief, and entitled to it in this action, if the evidence will justify such a judgment.

The uncontradicted evidence, the evidence of the defendants themselves, the legitimate legal presumption necessarily arising from the uncontradicted evidence, would seem to demand a different conclusion and judgment than that given by the referee. While the general rule is, that courts on these appeals will not review questions of fact where there is a conflict of evidence, the rule has never been carried to such an extent as to adopt absurd, unreasonable or unnatural conclusions from undisputed facts, or facts from which well-estab-

lished legal presumptions arise directly the converse of those arrived at by the referee. And the rules we have first above referred to do not limit the court to merely uncontroverted facts. The courts have gone as far, in the direction of making a referee a kind of scape-goat for unjust conclusions, as is safe; and they must not bring reproach upon themselves by a refusal to examine whether the adoption of the conclusions of a referee might not seem improperly to reflect upon the judicial mind which is to be called into exercise in a review.

We cannot shut our eyes to that extraordinary feature of this case. McMullen, whose agent Hill pretended to be, was a farmer, living forty miles in the interior; a stranger to all but the defendant Hill, who was, or pretended to be then, insolvent. McMullen having no bank account himself, and with no evidence of his acquaintance with business, other than farming, that he should buy a store of goods, put this insolvent Hill into it at a salary of fifty dollars a month, make him an agent with unlimited powers, continuing on for a period of six years, never during that time receiving any return, never inquiring as to the result of his agent's transactions, never inquiring as to the liability upon himself of his agent's dealings, his agent in the meantime closing up the mercantile business and entering into that, among others, of a broker in buying notes, bonds, mortgages, mules, horses, beeswax, sheep-skins, butter, apples; taking agencies and brokerage for other parties, and insurance companies and oil specu lators, from one of whom he received a salary of $100 per month; keeping no regular account of his dealings or profits, and with no account but his bank account, and that containing but a portion of his transactions, this bank account being kept in his own name as agent, without naming his principal; that during such agency for McMullen, he was able to purchase real estate in the name of his wife and to pay $1,750 thereon; that when this was done, he could, of his own will and pleasure, dissolve his relationship with his principal without consulting, accounting or settling with him, and could

draw out a balance of funds in the bank, under the McMullen agency, six weeks after he had established a new agency, in the name of his wife, as principal, and after he had deposited to her credit more than $5,500, and had then above $1,000 standing in bank to her credit; these, I say, are most extraordinary features. The case fails to disclose upon what terms and for what consideration he entered upon this last agency, and transacted business for his wife; but there is sufficient evidence that his wife was ignorant of its relation until a time, quite a period of time, after its pretended existence. Her testimony, read before the referee, taken on the occasion of his application for discharge in bankruptcy, states that she had no knowledge as to how her husband transacted his business, nor what business he had been engaged in; they never had any accounting or settling, and she had no knowledge of what business Hill claimed to have done in her name. She had no money or means when she married him, except some furniture of less than $200 in value, and most of this was given to her by her husband before marriage, and no one had given her property since her marriage. Notwithstanding the documentary evidence of the bank book, that Hill continued to transact business as agent for McMullen until May, 1867, his examination on oath before the commissioner in bankruptcy was also read in evidence, in which he testified that he commenced acting as agent of his wife in September, 1863 or 1864.

Without pursuing the evidences of fraudulent covering of property, and the contradictions in the testimony of the two defendants by documents, and by their examination on oath on the proceedings in bankruptcy, omitting all other evidence, it may be said that there is nothing to contradict these palpable implications of fraud by these defendants, legitimately to be drawn from the case. True, Hill swears that the money with which the real estate was purchased was the money of his wife; but this was swearing to a conclusion based upon the assumption that the money earned by him under the pretended agency was the money of his wife. It was, in fact,

swearing that his transactions were honest. It would seem that the referee, whose duty it was to draw conclusions from the whole case, adopted those sworn to by the defendant as a witness. Such testimony creates no conflict of fact; and there is nothing else in the case to sustain the findings of the referee but a reliance upon this character of testimony given by the defendant, Hill. The whole scheme and plan of conducting business by the defendant, William D. Hill, carries upon its face, and in all its features and arrangements, a deliberate design of so living and covering up the earnings and accumulations of business as to hinder, delay and defraud creditors; and at the same time to secure, in the name of the wife, Mary J. Hill, a homestead and competence for both defendants. To a court familiar with weighing testimony, and of judging of human actions by observation and experience, derived from the multiplied presentations of fraudulent experiments of this nature, the case at bar is but a bald and bungling experiment. With far less of evidence of the fraudulent design than the case at bar presents, the bankrupt court expressed its condemnation of the attempt to cover up the estate in the name of the wife, and, for that reason, refused a discharge. But for the fact that a referee from the legal profession had indorsed the integrity of such a scheme as the case presents, this court could have been saved the labor of a discussion of the question. It appears to me the fraud is so transparent that the attempt to sustain it here falls but little short of a reflection upon the judgment of the court. I have placed my opinion much upon the ground of the absence of evidence to sustain the report, and upon the necessary implications from undisputed facts.

There is, besides this, two rulings of the referee—one in striking out evidence at fols. 492, 403, and the other in the admission of evidence at fol. 494—which I think erroneous, and sufficient to authorize a reversal of the judgment; but I do not stop to discuss them. I put the case upon the ground above discussed. The defendant's counsel rely upon the case of *Abbey* v. *Deyo* (44 N. Y., 344, 348). If the facts were

Shepherd *v.* Hill.

alike it would be good authority; but they are dissimilar. There were evidences of good faith and facts which were sufficient to be submitted to the jury, and which the judge withheld from them. The agency was open and notorious, the goods were purchased and sold as such, and there was no other evidence from which fraud could be inferred than that the husband managed the affairs for his wife, and that he was insolvent. The judgment was reversed on the ground that the judge refused to submit the fact of intent to defraud to the jury. This was a sufficient ground for reversal; and had the jury found a fraudulent intent, the case could not have been reversed for that reason. The statute makes the question of fraud one for the jury. The judge erred in taking it from them; and the argument of both courts is that it might be honest, and that the law allows such transactions when they are conducted in good faith. But when the case is before a referee, and the appeal is from his conclusions, this court are to examine the whole case; and it is their duty to reverse if they draw different conclusions from the referee.

I am unable to agree with him in this case, and am, therefore, for reversing the judgment, ordering a new trial and vacating the order of reference, costs to abide the event.

DANIELS, J. I concur in the preceding opinion; and, in addition to the reasons given therein for a reversal of the judgment, think the referee erred in allowing the witness, Romer, after stating the manner in which he came to make the loan, to add his opinion or conclusion that he made it for the accommodation of Mrs. Hill.

New trial granted.